UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHELLE K. BARNHOUSE-MADSEN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner ) <br> of Social Security, ) <br> ) <br> Defendant. ) <br> ) | No. CV-07-3093-JPH <br><br> ORDER GRANTING DEFENDANT'S <br> MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on May 27, 2008. (Ct. Rec. 17, 19). Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Joanne Dantonio represents the Commissioner of Social Security ("Commissioner"). On May 28, plaintiff untimely filed a reply. (Tr. 21.) The parties have consented to proceed before a magistrate judge. (Ct. Rec. 8). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment. (Ct. Rec. 19). Plaintiff's Motion for Summary Judgment is **DENIED.** (Ct. Rec. 17).

**JURISDICTION**

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on February 22, 2002, alleging an onset date of January 25, 2002. (Tr. 74-76.) The application was denied initially and on reconsideration. (Tr. 48-51, 53-55.)

- 1 -

Administrative Law Judge (ALJ) Mary Bennett Reed held a supplemental hearing on June 19, 2006, following remand. (Tr. 649-700.) (At the first hearing, held April 21, 2004, medical expert Jay Toews, Ed. D., VE Linda Cleary, plaintiff, and Kathleen Peffer, plaintiff's mother, testified. (Tr. 592-646A.)) Plaintiff's last insured date was December 31, 2007; therefore, she needed establish that she was disabled on or before that date. (Tr. 16.) At the hearing before ALJ Reed, plaintiff, vocational expert Debra LaPoint, and Ms. Peffer testified. (Tr. 649-700.) On January 16, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 15-36.) The Appeals Council denied a request for review on September 19, 2007. (Tr. 5-7.) Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on October 15, 2007. (Ct. Rec. 4.)

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner, and will only be summarized here.

Plaintiff was 34 years old on the date of onset. (Tr. 34.) She has a high school education and almost two years of college. (Tr. 88, 675.) She has worked as a data entry clerk, material handler, stock control clerk, and floor attendant. (Tr. 693-695.)

Plaintiff alleges disability due to mental and physical impairments, including narcolepsy, depression, anxiety, migraine headaches, and back pain. (Tr. 82).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which

compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered. If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

   The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which

Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

Plaintiff has the burden of showing that drug and alcohol addiction ("DAA") is not a contributing material factor to disability. *Ball v. Massanari*, 254 F. 3d 817, 823 (9th Cir. 2001). The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(J); *Sousa v. Callahan*, 143 F. 3d 1240, 1245 (9th Cir. 1998). If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether the DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether alcoholism is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled and there is medical evidence of drug addiction or alcoholism, then the ALJ must proceed to determine if the claimant would be disabled if he or she stopped using alcohol or drugs. *Bustamante v. Massanari*, 262 F. 3d 949 (9th Cir. 2001.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.

1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial

evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found at the onset that plaintiff meets the nondisability requirements and is insured for disability benefits through December 31, 2007. (Tr. 16.) ALJ Reed found at step one that plaintiff has not engaged in substantial gainful activity during any time at issue. (Tr. 18.) At step two, the ALJ found that plaintiff suffered from the severe impairments of degenerative disc disease, depression, anxiety, personality disorder NOS, and substance dependence. (Tr. 18.) At step three, the ALJ found that plaintiff's mental impairments meet the criteria of four of the Listings, when the effects of substance abuse are included[1]. (Tr. 29.) ALJ Reed found plaintiff less than fully credible. (*Id.*, 34.) Because plaintiff's impairments met the criteria of the Listings, the ALJ found plaintiff disabled at step three. The ALJ's determination that substance abuse was material to the disability determination required the ALJ to consider whether plaintiff would still be disabled or suffer from severe impairments if she was not abusing substances. (Tr. 30.) The ALJ found that if plaintiff stopped abusing substances, she would still suffer the following severe impairments: degenerative

---

[1] The ALJ found plaintiff's impairments met sections 12.04 (affective disorders), 12.06 (anxiety-related disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders) of 20 C.F.R. 404.1520(d). (Tr. 29.)

- 7 -

disc disease, some signs and symptoms of depression and anxiety, and a personality disorder NOS. (Tr. 30.) The ALJ found that, without substance abuse, plaintiff's impairments do not meet or equal the Listings. (Tr. 30.) Prior to step four, the ALJ assessed an RFC for a reduced range of light work, assuming no substance abuse. (Tr. 31, 34.) At step four, relying on a vocational expert, the ALJ found plaintiff is unable to perform her past relevant work. (Tr. 34.) At step five, also relying on the VE's testimony, the ALJ found that there are other jobs plaintiff can perform. (Tr. 35.) Accordingly, at step five, the ALJ found that, when substance abuse is excluded, plaintiff is not disabled within the meaning of the Social Security Act. (Tr. 35-36.)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that the ALJ erred by finding at step two that her sleep impairment is not severe, improperly rejected lay witness testimony, and erred at step five by failing to include all of plaintiff's impairments in her hypothetical to the vocational expert. (Ct. Rec. 18 at 13).

The Commissioner opposes the Plaintiff's motion for summary judgment and asks that the ALJ's decision be affirmed. (Ct. Rec. 20 at 18).

**DISCUSSION**

**A. Weighing Medical Evidence - Step Two**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings;

the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F. 3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1453, 1463 (9th Cir. 1995). In addition to medical reports in the record, the analysis and opinion of a non-examining medical expert selected by an ALJ may be helpful to the adjudication. *Andrews v. Shalala*, 53 F. 3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F. 2d 747, 753 (9th Cir. 1989). Testimony of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.*

Plaintiff contends that the ALJ erred by finding at step two that idiopathic insomnia is not a severe impairment. (Ct. Rec. 18 at 15-19). The Commissioner responds that because the ALJ properly weighed the medical and lay evidence in making the

determination, it should be affirmed. (Ct. Rec. 20 at 13-14). Given the ALJ's step three finding that plaintiff's mental impairments meet the requirements of several of the Listings (Tr. 29), any alleged error at step two could arguably be deemed harmless.[2] Assuming without deciding that any error may be harmful, the court considers the issue.

An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb. Barnhart*, 433 F. 3d 683, 686-687 (9th Cir. 2005)(citing *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996); *see Yuckert v. Bowen*, 841 F. 2d 303, 306 (9th Cir. 1988). If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. S.S.R. No. 85-28 (1985). Step two, then, is "a de minimus screening device [used] to dispose of groundless claims," *Smolen*, 80 F. 3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. The question on review is whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination

---

[2] An error is harmless when the correction of that error would not alter the result. *See Johnson v. Shalala*, 60 F. 3d 1428, 1436 n. 9 (9th Cir. 1995). Further, an ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F. 3d 676, 679 (9th Cir. 2005) (*citing Curry v. Sullivan*, 925 F. 2d 1127, 1131 (9th Cir. 1991).

of impairments. *Webb*, 433 F. 3d at 687; *see also Yuckert*, 841 F. 2d at 306.

Treating doctor Allen Quinn, D.O., saw plaintiff on December 20, 2001, for low back and neck pain. (Tr. 164.) Plaintiff had gone to the ER suffering severe pain. Oxycontin and (Dr. Quinn believed) hydrocodone had been prescribed at the hospital. Dr. Quinn authorized prescription refills later that day. Plaintiff was not sure why her pain had increase but suspected stress and anxiety. After examination and osteopathic manipulative therapy, Dr. Quinn assessed lumbosacral and cervical thoracic sprain/strain from a motor vehicle accident, history of migraine cephalalgia, and history of depression with anxiety. He prescribed oxycontin, oxycodone, lortab, and xanax, and scheduled plaintiff to return in two weeks. (*Id.*)

Plaintiff returned on May 21, 2002, about five months later, for a headache that had lasted four days. (Tr. 163.) On June 26, 2002, Dr. Quinn notes plaintiff fell the previous evening. He assessed multiple contusions, muscle spasms and injuries from the fall, and prescribed pain medication. (Tr. 163.) On July 6, 2002, plaintiff called Dr. Quinn at home stating she had been in pain the past four days, went to the ER a day earlier, and was given a shot. She requested early refills on her medication; plaintiff had used most of her medication because of increased pain. Dr. Quinn authorized refills but plaintiff failed to show for her next appointment on July 15, 2002. (Tr. 162.)

On July 8, 2002, Dr. Quinn wrote a letter to plaintiff's employer (the postal service) medically documenting her eligibility for disability retirement. (Tr. 160.) Dr. Quinn

1   assessed plaintiff with two main disabilities: 1) idiopathic
2   hypersomnia, "which is very much like narcolepsy where she falls
3   asleep randomly throughout the day" and has had falls from this
4   impairment, and 2) "chronic disabling back pain," caused by a
5   history of several accidents which he opined require "quite strong
6   pain medication." (Tr. 160.) Dr. Quinn's letter acknowledged
7   that he did not have plaintiff's sleep studies (conducted by Dr.
8   Greenburg) when making this assessment. Dr. Quinn opined that
9   plaintiff should be granted a disability retirement. (*Id.*)
10       The ALJ notes that Dr. Quinn and other providers's later
11  records do not mention a sleep disorder:

> [Dr. Quinn reported plaintiff] in the past also had
> disabling migraine headaches, which were helped with
> hormone therapy.  Dr. Quinn opined she should be granted
> a disability retirement.  By September 2002, Dr. Quinn
> reported she wanted to taper off her medication, but also
> wanted pain relief.  She was very anxious with a bit of
> shaking, and was complaining of quite a bit of pain in
> her back.  Tapering strategies were discussed.  She had
> apparently spent the night in detox and was suicidal.
> She stated she had met with a psychiatrist.  She was
> placed on duragesic patches to help with stabilization.
> Dr. Quinn assessed chronic back pain from back injuries
> and withdrawal symptoms from tapering too quickly.  Later
> that month, [plaintiff] again self-tapered and ended up
> in the emergency room with withdrawal symptoms.  They
> gave her some flurazepam and she overdosed on that and
> had to go back and have her stomach pumped.  She was very
> anxious and agitated, and requested something to calm her
> down.  Dr. Quinn felt the main problem was her self
> effort to taper instead of following a schedule."

(Tr. 19, referring to Exhibit 4F).

   The ALJ rejected idiopathic insomnia as a severe impairment
noting that by the time plaintiff saw T. Kent Vye, D.O., in
September of 2002 (about eight months after onset), "no mention
was made of this impairment." (Tr. 28.) The ALJ relied on
records dated September 13, 2002, indicating plaintiff wanted to
return to work at the post office. (Tr. 20, referring to Tr.

- 12 -

167.)  The ALJ points out that there is no evidence in later records that plaintiff continued to be treated for a sleep disorder. (Tr. 28.)  The ALJ notes that the sleep testing conducted by Dr. Greenburg in May of 2001 (and referred to by Dr. Quinn) was stopped because plaintiff experienced a panic attack.  (Tr. 18.)  The record does not show retesting.

The medical evidence clearly establishes that, after onset on January 25, 2002, plaintiff did not suffer the medically severe impairment of idiopathic hypersomnia for twelve continuous months. *See Webb*, 433 F. 3d at 686-687 (9th Cir. 2005).  The ALJ's step two finding with respect to this impairment is supported by the evidence and free of legal error.

**B. Lay Testimony**

Plaintiff contends that ALJ Reed failed to give germane reasons for rejecting the lay testimony of Ms. Peffer, her mother, with respect to a sleep disorder. (Ct. Rec. 18 at 17-19).  The Commissioner responds that the ALJ properly considered this testimony, as well as that of plaintiff's spouse, Kevin Madsen, and assessed an RFC consistent with the limitations described by Ms. Peffer.  (Ct. Rec. 20 at 13-14).

The ALJ may not ignore or improperly reject the probative testimony of a lay witness without giving reasons that are germane to each witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ shall "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987), *citing* 20 C.F.R. § 404.1513(e)(2).

///

The ALJ notes Ms. Peffer's testimony that plaintiff:

> has had problems handling money, cannot stay on task, and has mood swings. On her bad days, she was not caring for her 6-year old son. She has had problems maintaining relationships as she has rages and doesn't cook or clean. Her mother felt she was better when she was on medication. Her meth use has caused her to lose everything, and she is living in her car. Even when she was on proper medications, she had problems at home with housework, and couldn't get out of bed most days. She had trouble getting along with others.
>
> In a statement at Exhibit 10E, her mother indicated that the claimant had made suicidal statements, but was able to do well at school. She was noted to have taken drugs in her late teens and been addicted to pain killers, with terrible withdrawals. She had difficulty on her job at the Post Office with other people[3] and her supervisors and was eventually given disability. This statement and Ms. Peffer's testimony indicates that the claimant's substance addiction has had a significant adverse impact on the claimant's functioning.

(Tr. 33.)

The ALJ discussed the testimony of Mr. Madsen, plaintiff's spouse:

> The claimant's husband reported that he was the primary caregiver for the children and eventually took over the majority of the housework. She [plaintiff] occasionally had problems taking care of herself. She had had problems with her medications as they would lose effectiveness over time, but she also would forget to take them or have them refilled. Her problems were exacerbated when she was over prescribed painkillers[4], which magnified her sleeping problems, leading to the loss of her job. She was currently under fair control on medications. This statement also supports the conclusion that the claimant's limitations are more severe when her substance abuse/addiction is taken into account.

(Tr. 33.)

---

[3] Plaintiff worked with her mother at the post office. (Tr. 689.)

[4] The record indicates plaintiff filed a complaint or sued Dr. Quinn for medical malpractice, allegedly for over prescribing medication. (Tr. 659.)

1  At step three, the ALJ found plaintiff disabled when
2  substance abuse is included.  In making this determination, ALJ
3  Reed considered Ms. Peffer's and Mr. Madsen's statements, noting
4  that they both opined that plaintiff was more limited when abusing
5  substances.  (Tr. 33.)  Rather than rejecting the lay testimony,
6  the ALJ considered and partially credited it.  There was no error
7  in the ALJ's assessment of the lay testimony.

**C. Step Five**

Plaintiff argues that the ALJ erred at step five because she failed to include all of plaintiff's impairments in her hypothetical to the VE, specifically, the limitations assessed by Dr. Toews at the first hearing, and the sleep disorder assessed by Dr. Quinn.  (Ct. Rec. 18 at 20-21.)  The Commissioner responds that the ALJ included all of plaintiff's severe impairments established by the evidence.  (Ct. Rec. 20 at 15-17).

Plaintiff restates her first argument (that the sleep disorder assessed by Dr. Quinn is a severe impairment) in a slightly different form: the ALJ should have included the sleep disorder assessed by Dr. Quinn in her hypothetical to the VE. (Ct. Rec. 18 at 21).  The court has resolved this issue by finding that the ALJ properly found an alleged sleep disorder is not, on this record, a severe impairment.  With respect to the opinion of Dr. Toews, the Commissioner responds that the ALJ properly discredited his opinion.  She was not required to include discredited limitations in her hypothetical.  (Ct. Rec. 20 at 15-17).

ALJ Reed did not adopt Dr. Toews's assessed limitations in part because, at the time of the first hearing, Dr. Toews

apparently did not have any information with respect to plaintiff's substance abuse. (Tr. 28-29.) ALJ Reed eventually found that substance abuse is a factor material to plaintiff's disability finding; accordingly, the ALJ properly gave little weight to a medical opinion that failed to take this into account. Another reason the ALJ rejected Dr. Toews's opinion was that it appeared to be based on plaintiff's unreliable self-report. This reason too is supported by substantial evidence in the record.

The Commissioner notes that the ALJ gave greater weight to the July of 2004 opinion of examining psychologist Emma Billings, Ph.D., than to Dr. Toews's. (Ct. Rec. 20 at 17, referring to Tr. 22-23.) The ALJ notes that, according to Dr. Billings's report, plaintiff was attending community college three hours a day, "where she had been for six quarters," with a GPA of 3.41. (Tr. 22-23.) The ALJ observes that plaintiff's MMPI-2 results were of questionable validity "due to the possible deliberate attempt to portray herself in an unfavorable light"; Dr. Billings assessed mild limitations in the ability to interact appropriately with the public and with supervisors, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting; and Dr. Billings assessed moderate limitations in the ability to interact appropriately with coworkers. (Tr. 23, referring to Exhibit 11F/8-9.) The ALJ included the limitations assessed by Dr. Billings in her hypothetical. (Tr. 696.) As an examining psychologist, Dr. Billings's opinion was entitled to greater weight than that of a non-examining psychologist. *See Benecke v. Barnhart*, 379 F. 3d at 592.

The ALJ's step five hypothetical included all of plaintiff's severe impairments established by the medical evidence. Although it is not challenged on appeal, the ALJ's DAA analysis is also proper.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this   5th   day of June, 2008.

   /s/ James P. Hutton   
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE